Slip Op. 11-19

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **UNITED STATES STEEL CORPORATION**, <br><br> Plaintiff, <br><br> and <br><br> **NUCOR CORPORATION**, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> **UNITED STATES**, <br><br> Defendant, <br><br> and <br><br> **UNION STEEL**, **POSCO**, **POHANG COATED STEEL CO., LTD.**, and **HYUNDAI HYSCO**, <br><br> Defendant-Intervenors. | **Before: Timothy C. Stanceu, Judge** <br><br> **Consol. Court No. 09-00156** |

## OPINION AND ORDER

[Remanding for reconsideration and redetermination the final results of an administrative review of the antidumping order on certain corrosion-resistant carbon steel flat products from the Republic of Korea]

Dated: February 15, 2011

*Skadden, Arps, Slate, Meagher & Flom, LLP* (*Jeffrey D. Gerrish* and *Stephen J. Narkin*) for plaintiff United States Steel Corporation.

*Wiley Rein, LLP* (*Timothy C. Brightbill*, *Lori E. Scheetz*, and *Alan H. Price*) for plaintiff-intervenor Nucor Corporation.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Claudia Burke*); *Daniel J. Calhoun*, Office of the Chief Counsel for

Import Administration, United States Department of Commerce, of counsel, for defendant
United States.

    *Troutman Sanders LLP* (*Donald B. Cameron*, *Julie C. Mendoza*, *R. Will Planert*, *Brady W. Mills*, and *Mary S. Hodgins*) for defendant-intervenor Union Steel.

    *Akin, Gump, Strauss, Hauer & Feld, LLP* (*Jaehong D. Park*, *Bryce V. Bittner*, *Jarrod M. Goldfeder*, *Lisa-Marie W. Ross*, and *Natalya D. Dobrowolsky*) for defendant-intervenors POSCO and Pohang Coated Steel Co., Ltd.

    *Akin, Gump, Strauss, Hauer & Feld, LLP* (*Jaehong D. Park*, *Bryce V. Bittner*, *Jarrod M. Goldfeder*, *Lisa-Marie W. Ross*, and *Natalya D. Dobrowolsky*) for defendant-intervenor Hyundai Hysco.

    Stanceu, Judge:  Plaintiff United States Steel Corporation ("U.S. Steel"), a domestic

manufacturer of corrosion-resistant carbon steel flat products ("CORE"), brought this action

under section 516A of the Tariff Act of 1930 ("Tariff Act" or the "Act"), 19 U.S.C. § 1516a

(2006), to contest a determination (the "Final Results") that the International Trade

Administration, United States Department of Commerce ("Commerce" or the "Department")

issued in the fourteenth periodic administrative review of an antidumping duty order on imports

of certain CORE from the Republic of Korea ("subject merchandise").  U.S. Steel Compl.

¶¶ 1, 3; *Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea:*
*Notice of Final Results of the Fourteenth Admin. Review & Partial Rescission*, 74 Fed.

Reg. 11,082 (Mar. 16, 2009) ("*Final Results*").  In an action (Court No. 09-00152) consolidated

with that brought by U.S. Steel, Nucor Corporation ("Nucor"), a domestic manufacturer of

CORE, also contested the Final Results.

    Before the court are U.S. Steel's and Nucor's Rule 56.2 motions for judgment upon the

agency record.  U.S. Steel claims that Commerce, when determining the cost of production of

subject merchandise produced by respondent Union Steel Manufacturing Co., Ltd. ("Union"),

acted in disregard of its own regulation in declining to adjust data pertaining to the costs Union

incurred in obtaining from suppliers affiliated with Union a production input, "steel substrate"

(carbon steel coil used to make the subject merchandise), based on a finding that any such

adjustment would be negligible.  Mem. in Supp. of Pl.'s Mot. for J. on the Agency R. under

Rule 56.2, at 2 ("U.S. Steel Mem.").  Nucor objects to other decisions Commerce made affecting

the valuation of Union's purchases of steel substrate from suppliers affiliated with Union.  Br. in

Supp. of Nucor Corp.'s Rule 56.2 Mot. 1 ("Nucor Br.") .  Nucor also claims that Commerce

erred in determining that Pohang Iron & Steel Co., Ltd. ("POSCO") and Pohang Coated Steel

Co., Ltd. (collectively, the "POSCO Group"), producers of subject merchandise affiliated with

Union, should not be "collapsed" with Union, *i.e.* treated as a single entity, for purposes of the

administrative review.  *Id.* at 2.

Defendant voluntarily requests a remand order under which the Department would

reconsider its determination that potential adjustments to Union's reported costs for acquiring

steel substrate should be disregarded as negligible.  Def.'s Resp. to Pls.' Mot. for J. upon the

Agency R. 1-2 ("Def. Resp.") .  U.S. Steel supports the government's remand request, which the

court will grant.  Reply Br. in Supp. of Pl.'s Mot. for J. on the Agency R. under Rule 56.2, at 2.

With one exception, the court finds merit in Nucor's claims and includes in the remand order

instructions under which Commerce must address these claims.

## I. BACKGROUND

Commerce published the antidumping duty order on corrosion-resistant carbon steel flat

products in 1993.  *Antidumping Duty Orders on Certain Cold-Rolled Carbon Steel Flat Products*

*& Certain Corrosion-Resistant Carbon Steel Flat Products From Korea*, 58 Fed. Reg. 44,159

(Aug. 19, 1993).  On September 25, 2007, Commerce initiated the fourteenth review of the

order, which pertains to imports of subject merchandise made during the period of August 1,

2006 through July 31, 2007 (the "period of review").  *Initiation of Antidumping &*

*Countervailing Duty Admin. Reviews & Requests for Revocation in Part*, 72 Fed. Reg. 54,428,

54,428 (Sept. 25, 2007).  On September 9, 2008, Commerce issued the preliminary results of the

review ("Preliminary Results").  *Certain Corrosion-Resistant Carbon Steel Flat Products From*

*the Republic of Korea: Notice of Prelim. Results of the Antidumping Duty Admin. Review*, 73

Fed. Reg. 52,267 (Sept. 9, 2008) ("*Prelim. Results*").  Following publication on March 16, 2009

of the Final Results, 74 Fed. Reg. at 11,082, U.S. Steel and Nucor instituted the current actions.

U.S. Steel Compl.; Nucor Compl.

## II. Discussion

The court exercises jurisdiction pursuant to section 201 of the Customs Courts Act of

1980, 28 U.S.C. § 1581(c), which grants the Court of International Trade exclusive jurisdiction

over any civil action commenced under 19 U.S.C. § 1516a.  The court reviews the Final Results

based on the agency record.  *See* Customs Courts Act of 1980, § 301, 28 U.S.C. § 2640(b);

19 U.S.C. § 1516a(b)(1)(B)(i).  The court "shall hold unlawful any determination, finding, or

conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not

in accordance with law . . . ."  19 U.S.C. § 1516a(b)(1)(B)(i).  "Substantial evidence is more than

a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

A.  Remand Is Appropriate to Allow the Department to Reconsider Its Finding that Potential
     Adjustments to Union's Steel Substrate Costs Should Be Disregarded as Negligible

Commerce may "decline to take into account adjustments which are insignificant in

relation to the price or value of the merchandise."  Tariff Act, § 777A(a)(2), 19 U.S.C.

§ 1677f-l(a)(2).  The Department's regulations, in 19 C.F.R. § 351.413 (2007), set forth a

standard of less than 0.33% *ad valorem* that Commerce ordinarily applies to determine whether

an adjustment is insignificant.[1]

U.S. Steel challenges the Department's valuation of steel substrate that Union purchased

from affiliated suppliers.  U.S. Steel Mem. 2.  U.S. Steel argues that under both the "transactions

disregarded rule" of section 773(f)(2) of the Tariff Act, 19 U.S.C. § 1677b(f)(2), and the "major

input rule" of section 773(f)(3) of the Tariff Act, 19 U.S.C. § 1677b(f)(3), Commerce erred in

valuing an input obtained from affiliated suppliers using the transfer prices, which U.S. Steel

alleges to have been lower than the market prices.  U.S. Steel Mem. 12.[2]  U.S. Steel claims that

_____

[1] The regulation provides that,
Ordinarily, under section 777A(a)(2) of the Act [(*i.e.*, 19 U.S.C. § 1677f-1)], an
"insignificant adjustment" is any individual adjustment having an *ad valorem* effect
of less than 0.33 percent, or any group of adjustments having an *ad valorem* effect of
less than 1.0 percent, of the export price, constructed export price, or normal value,
as the case may be.  Groups of adjustments are adjustments for differences in
circumstances of sale under § 351.410, adjustments for differences in the physical
characteristics of the merchandise under § 351.411, and adjustments for differences
in the levels of trade under § 351.412."
19 C.F.R. § 351.413 (2007).

[2] In the "transactions disregarded" rule, the antidumping law provides that,
A transaction directly or indirectly between affiliated persons may be disregarded if,
in the case of any element of value required to be considered, the amount
representing that element does not fairly reflect the amount usually reflected in sales
of merchandise under consideration in the market under consideration.
19 U.S.C. § 1677b(f)(2) (2006).  The "major input" rule provides that,

                                                                    (continued...)

Commerce should have made an upward adjustment to those prices and unlawfully disregarded

the standard of 19 C.F.R. § 351.413 in deciding to disregard any adjustment as insignificant.

*Id*. at 12, 19.

Defendant responds by stating that "because Commerce's finding that certain potential

adjustments under the major input rule and transactions disregarded rule were negligible may

have been based on erroneous calculations, we respectfully request a remand to reexamine the

accuracy of those calculations, to make any necessary corrections to those calculations, and to

reconsider, if appropriate, the treatment of those adjustments."  Def. Resp. 6.  The court

concludes that Commerce should be granted the opportunity on remand to reconsider the

decision to disregard the adjustments as negligible and to make all changes that may be required

to resolve this issue in accordance with the antidumping statute and regulations.

### B.  Upon Remand, Commerce Must Reconsider its Decision Not to Apply the Major Input Rule to Union's Purchases of Steel Substrate from the POSCO Group

In the Final Results, Commerce applied the major input rule to only one of Union's

related suppliers of steel substrate.  Issues & Decisions Mem., A-580-816, ARP 3-09, at 20

(Mar. 9, 2009) (Admin. R. Doc. No. 4868) ("*Decision Mem.*"); *Final Results*, 74 Fed. Reg.

at 11,083.  Nucor claims that Commerce erred in declining to apply the major input rule to

---

[2](...continued)
If, in the case of a transaction between affiliated persons involving the
production by one of such persons of a major input to the merchandise, the
administering authority has reasonable grounds to believe or suspect that an
amount represented as the value of such input is less than the cost of
production of such input, then the administering authority may determine the
value of the major input on the basis of the information available regarding
such cost of production, if such cost is greater than the amount that would be
determined for such input under paragraph (2) [19 U.S.C. § 1677b(f)(2)].
19 U.S.C. § 1677b(f)(3).

Union's steel substrate purchases from all other suppliers related to Union, including the POSCO

Group.  Nucor Br. 10.  In the issues and decisions memorandum that Commerce incorporated by

reference in the Final Results ("Decision Memorandum"), *Final Results*, 74 Fed. Reg. at 11,083,

Commerce based its decision not to apply the major input rule to the POSCO Group on a finding

of fact that "the record shows that the POSCO Group, and certain other affiliated suppliers,

accounted for insignificant percentages of Union's total purchases of substrate during the POR."

*Decision Mem.* 20.  With respect to the POSCO Group, Nucor cites to record evidence

demonstrating that Union's purchases of steel substrate from the POSCO Group were not

insignificant as a percentage of Union's total substrate purchases.  Nucor Br. 10 ("This

determination was mathematically incorrect and therefore unsupported by substantial

evidence.").  Defendant now concedes that the Department erred in stating in the Decision

Memorandum that Union's purchases from the POSCO Group were an insignificant percentage

of Union's total substrate purchases, describing that finding as an "inadvertent error."  Def.

Resp. 13.  According to defendant's argument, the real reason that Commerce declined to apply

the major input rule to these purchases was that "there was insufficient information on the record

to conduct a major input analysis."  *Id.*  Defendant adds that "[i]n its proprietary calculation

memorandum, Commerce fully explains the reasons why it declined to apply the major input rule

to the POSCO Group purchases."  *Id.*

        The court is required to review a determination of an agency on the basis of the reasoning

the agency puts forth.  *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] reviewing court,

in dealing with a determination or judgment which an administrative agency alone is authorized

to make, must judge the propriety of such action solely by the grounds invoked by the agency.").

The Decision Memorandum, unlike the "proprietary calculation memorandum" to which

defendant refers therein, is incorporated by reference into the Final Results and, therefore,

presents the reasoning on which the court must consider the Department's decision not to apply

the major input rule to the POSCO Group.  Because that reasoning is based on a finding of fact

that is, as defendant concedes, unsupported by substantial record evidence, the decision not to

apply the major input rule to the valuation of Union's purchases of substrate from the POSCO

Group must be reviewed and reconsidered on remand.

C.  On Remand, Commerce Must Reconsider, and Explain Satisfactorily, its Method of Applying
the Major Input Rule to Value the Steel Substrate that Union Obtained from JFE Steel through
Purchases from a Trading Company Affiliated with Union

       The one supplier of steel substrate affiliated with Union to which Commerce applied the

major input rule, JFE Steel, sold to Union through a trading company also affiliated with Union.

Br. in Opp'n to the Mot. of Pls. U.S. Steel Corp. & Nucor Corp. for J. upon the Agency R. 12

("Union Br.") (disclosing that Commerce applied the major input rule to JFE Steel).  *Decision*

*Mem.* 21. ("We note that Union purchased various forms of steel substrate manufactured by [a]

certain affiliated supplier and sold to Union through a certain affiliated supplier during the

POR.").  In applying the major input rule, under which Commerce is to value the input on the

basis of the information available regarding the cost of production, *see* 19 U.S.C. § 1677b(f)(3),

Commerce obtained and examined data from the trading company, even though the trading

company was not the producer, *Decision Mem.* 21.  As it had for Union's purchases from the

other affiliated suppliers of steel substrate, Commerce ultimately decided not to make any

adjustment to the data on Union's cost of acquisition.  *Id.*

Nucor claims that Commerce misapplied the major input rule in requesting and examining only data from the trading company and not cost of production data from the actual producer.  Nucor Br. 10-11.  Although Nucor acknowledges that application of the major input rule is discretionary, it argues that once Commerce decided to apply the major input rule, it was required to value the input according to information on the actual cost of production.  *Id.* at 11 ("In this case, the Tariff Act explicitly states that '[i]f, in the case of a transaction between affiliated persons involving the *production* by one of such persons of a major input to the merchandise . . . then the administering authority may determine the value of the major input on the basis of the information available regarding such *cost of production*.'" (alterations in original) (citing 19 U.S.C. § 1677b(f)(3))).

Defendant argues that Commerce complied with the major input rule by comparing the trading company's average selling price to Union with the "cost of production," which it based on the cost the trading company incurred in purchasing substrate from the producer and the trading company's selling, general, and administrative expenses.  Def. Resp. 10.  Defendant bases its argument on the language of 19 U.S.C. § 1677b(f)(3), emphasizing that the statute allows valuation "*on the basis of the information available* regarding such cost of production." *Id.* at 9 (quoting 19 U.S.C. § 1677b(f)(3)).  According to defendant, Commerce could base its application of the major input rule on data from the trading company because those data were the best information available, in that the record contained no cost of production information from the producer.  *Id.* at 10.

The court must consider Commerce's decision based on the reasoning the Department put forth.  *Chenery Corp.*, 332 U.S. at 196.  The Decision Memorandum, however, contains only

the briefest explanation of the reasoning underlying the Department's decision to request and use

the information from the trading company.  The Decision Memorandum explains that "[b]ecause

this certain affiliated supplier is a trading company, and therefore does not manufacture, we

requested and obtained its weighted average *purchase costs* for certain steel substrates during the

POR."  *Decision Mem*. 21 (emphasis added).  There is no explanation in the Decision

Memorandum of why Commerce did not seek to obtain production cost information from the

producer rather than purchase cost information from the trading company or why it concluded

that purchase cost information from the trading company would suffice for application of the

major input rule.  Defendant, in its response to Nucor's motion, argues that there was no

guarantee that the trading company would have responded to an information request, noting that

the trading company was not a party to the proceeding, could not have been compelled to

provide information, and, in a previous segment of the proceeding, had refused to provide its

cost of production data.  Def. Resp. 10-11.  This explanation appears nowhere in the Decision

Memorandum and, therefore, does not constitute a statement of the Department's reasoning for

purposes of judicial review.

      The Decision Memorandum also states, confusingly, that "[t]he Department determines

that Union's purchases of steel substrate from a certain supplier constitute a major input and,

therefore, we examined these purchases as directed by section 773(f)(3) of the Act [19 U.S.C.

§ 1677b(f)(3)] and 19 CFR 351.407(b)(2)."  *Decision Mem.* 20-21.  The statutory provision it

cites, section 773(f)(3) of the Tariff Act, refers to valuing a major input based on the cost of

production, but the regulatory provision it cites refers to valuing a major input based on market

value.  *See* 19 C.F.R. § 351.407(b) ("For purposes of section 773(f)(3) of the Act, the Secretary

normally will determine the value of a major input purchased from an affiliated person based on

the higher of . . . (2) the amount usually reflected in sales of the major input in the market under

consideration . . . .").  Because the Department gives no indication elsewhere that it intended to

value the input based on market value as opposed to cost of production, it is arguable that the

court should read the Decision Memorandum as intending to refer to 19 C.F.R. § 351.407(b)(3)

("The cost to the affiliated person of producing the major input.").[3]  However, in view of

Commerce's own finding that the record did not contain data on the producer's costs, the

Department's statement of its reasoning is unsatisfactorily opaque even when read in this way.

Due to the deficiencies in the explanation put forth in the Decision Memorandum, the court will

remand for reconsideration and explanation the Department's valuation of the steel substrate

produced by JFE Steel.

### D.  Commerce Did Not Err in Declining to Apply the Major Input Rule to Union's Other Steel Substrate Suppliers

The court next considers Nucor's claim that the Department acted unlawfully in applying

the transaction disregarded rule, rather than the major input rule, to Union's affiliated suppliers

of steel substrate other than the trading company and the POSCO Group.  Nucor Br. 14-18.  In

the Decision Memorandum, Commerce explained that "[i]n determining whether an input is

---

[3] The regulation provides that:
For purposes of section 773(f)(3) of the Act [19 U.S.C. § 1677b(f)(3)], the Secretary normally will determine the value of a major input purchased from an affiliated person based on the higher of:
(1) The price paid by the exporter or producer to the affiliated person for the major input;
(2) The amount usually reflected in sales of the major input in the market under consideration; or
(3) The cost to the affiliated person of producing the major input.
19 C.F.R. § 351.407(b).

considered 'major,' among other factors, the Department looks at both the percentage of the

input obtained from affiliated suppliers (as opposed to unaffiliated suppliers) and the percentage

the individual element represents in the product's cost of manufacture (COM)." *Decision*

*Mem.* 20.  Commerce found that only purchases of steel substrate from a certain affiliated

supplier (*i.e.* the trading company, as discussed previously) qualified as major inputs under

19 U.S.C. § 1677b(f)(3) and 19 C.F.R. § 351.407(b) and therefore applied the major input rule to

those purchases of steel substrate.  *Decision Mem.* 20.  For Union's purchases of steel substrate

from all other affiliated suppliers, including in particular the POSCO Group, Commerce applied

the transactions disregarded rule.  *Id.*  Commerce found, pursuant to 19 U.S.C. § 1677b(f)(3),

that the purchases from the other affiliated suppliers and the POSCO Group "accounted for

insignificant percentages of Union's total purchases of substrate during the POR."  *Id.*

    As discussed previously, Nucor concedes that the application of the major input rule is

discretionary.  Nucor Br. 11; *see* 19 U.S.C. § 1677b(f)(3) (providing that the Department, in the

circumstance contemplated by the major input provision, "may determine the value of the major

input on the basis of the information available regarding such cost of production . . . .").  Nucor's

argument is that, despite the discretion afforded by § 1677b(f)(3), Commerce, without adequate

explanation, departed in this case from its past practice of aggregating all purchases of the same

input from various affiliates when determining whether an input is considered major for purposes

of deciding whether to apply the major input rule.  Nucor Br. 15.  Nucor invokes the established

principle that an agency must either conform itself to prior decisions or explain the reasons for

its departure.  *Id.*  Nucor characterizes the decision to depart from this alleged practice as

"unsupported by substantial evidence," arguing that the record demonstrates that a large

percentage of Union's steel substrates were purchased from affiliated suppliers and that "steel

substrates are by far the most significant input to the production of CORE . . . ."  *Id.* at 17.

Defendant takes issue with Nucor's contention that the Department's decision not to

apply the major input rule to the suppliers in question was a departure from practice.  Def.

Resp. 15.  Defendant cites a recent administrative review in which "Commerce found that an

input purchased by one affiliated supplier was not significant in relation to the total costs

incurred to produce the merchandise" and "excluded that company's input from the major input

rule while subjecting the same input from another affiliated supplier to the major input rule."

*Id.* at 15-16 (citing *Certain Hot-Rolled Carbon Steel Flat Products from Thailand: Final Results*

*of Antidumping Duty Admin. Review & Partial Rescission of Antidumping Duty Admin. Review*,

72 Fed. Reg. 27,802 (May 17, 2007); Issues & Decision Mem., A-549-817, ARP 5-07, cmt. 3

(May 7, 2007), *available at* http://ia.ita.doc.gov/frn/index.html).  Defendant also cites the

preamble accompanying the promulgation of the Department's regulations in support of the

Department's decision to apply the major input rule to fewer than all affiliated suppliers of steel

substrate.  *Id.* at 15 (citing *Antidumping Duties; Countervailing Duties; Final rule*, 62 Fed. Reg.

27,295, 27,336 (May 19, 1997) ("The determination of which inputs are 'major' must be made

on a case-by-case basis taking into consideration the nature of the product, its inputs, and the

company-specific information on the record.")).

As defendant's citation to a recent review demonstrates, what Nucor considers to be a

Departmental "practice" has not been uniformly followed.  The court, therefore, will not reject

the Department's explanation of its reasons for declining to apply the major input rule to

affiliates other than the POSCO Group and the trading company for failure to explain a departure

from an alleged agency practice.  The court also concludes that substantial evidence supports the

Department's finding that the affiliated suppliers in question "accounted for insignificant

percentages of Union's total purchases of substrate during the POR."  *See Decision Mem.* 20.

 In conclusion, the court rejects Nucor's claim that Commerce acted contrary to law in

declining to apply the major input rule to the affiliated suppliers other than the POSCO Group

and the trading company.

<u>E.  Commerce Based its Decision Not to Collapse Union and the POSCO Group Partly on a<br>Finding of Fact that Is Unsupported by Substantial Evidence on the Record</u>

 Acting under its regulation, 19 C.F.R. § 351.401(f)(1), Commerce decided not to treat

Union and the POSCO Group as a single entity, *i.e.*, not to "collapse" the two affiliated parties,

for purposes of the review.  *Decision Mem.* 22-23.  The regulation provides that Commerce will

collapse two affiliated producers if it makes the following two findings of fact: (1) the producers

have production facilities for similar or identical products that would not require substantial

retooling of either facility in order to restructure manufacturing priorities, and (2) there is a

significant potential for the manipulation of price or production.  19 C.F.R. § 351.401(f)(1).

According to the regulation, the factors Commerce considers when identifying a "significant

potential for the manipulation of price or production" include, but are not limited to: "[t]he level

of common ownership;" "[t]he extent to which managerial employees or board members of one

firm sit on the board of directors of an affiliated firm;" and "[w]hether operations are

intertwined, such as through the sharing of sales information, involvement in production and

pricing decisions, the sharing of facilities or employees, or significant transactions between the

affiliated producers."  *Id.* § 351.401(f)(2).

Nucor challenges the decision not to collapse Union and the POSCO Group.  Nucor

objects, first, that Commerce found in the Preliminary Results that the two companies have

production facilities for manufacturing subject merchandise that would not require substantial

retooling to restructure manufacturing priorities but then, contrary to the record evidence,

reversed that finding in the Final Results.  Nucor Br. 20.  Nucor contends, second, that

Commerce erroneously found that there was no potential for manipulation of price or production.

*Id.* at 21.  In making this second argument, Nucor takes issue with a finding by Commerce that

there were no significant transactions between Union and the POSCO Group during the period of

review.  *Id.* at 19-20.  Nucor's second argument relies on a memorandum of understanding

between the POSCO Group and Union's parent company, which Nucor construes to signify "a

real and significant potential for manipulation" that meets "the Department's forward-looking

test for collapsing two companies."  *Id.* at 22; Reply Br. of Nucor Corp. 13; Def. Resp. 20

(discussing the "memorandum of understanding").

Nucor cites a pre-decisional memorandum ("Collapsing Memorandum" or "pre-

decisional memorandum") in contending that Commerce, in the Preliminary Results, found that

production facilities of Union and the POSCO Group would not require substantial retooling to

restructure manufacturing priorities.  Nucor Br. 20 (citing *Mem. to Dir., AD/CVD Operations*

*Office 3*, at 4 (Sept. 2, 2008) (Admin R. Doc. No. 4733)).  Based on its review of the Collapsing

Memorandum, the court concludes that Nucor is correct in its characterization of the finding

stated therein.  As published, the Preliminary Results make no mention of such a finding.  *See*

*Prelim. Results*, 73 Fed. Reg. at 52,267-72.  But referring to the Preliminary Results, the

Decision Memorandum states that "[t]he Department also found that the POSCO Group and

Union did *not* fit the criteria of 19 CFR 351.401(f), where two or more producers have

production facilities for similar or identical products that would not require substantial retooling

of either facility to restructure manufacturing priorities." *Decision Mem.* 22 (emphasis added).

The discussions in the Decision Memorandum and the pre-decisional memorandum

appear to be inconsistent on what the Department decided in the Preliminary Results as to

possible retooling of manufacturing facilities.  The Decision Memorandum makes no separate

finding on this point; it appears that Commerce considered discussion of this issue unnecessary

due to its finding that "there is no significant potential for the POSCO Group and Union to

manipulate the price or cost of CORE exported to the U.S." *Id.* at 23.  As support for the latter

finding, the Decision Memorandum states that "the POSCO Group['s] and Union's operations

are not intertwined, such as through common ownership, sharing of board members, sharing of

sales information, involvement in production and pricing decisions, the sharing of facilities or

employees, or significant transactions between affiliated producers." *Id.* at 22.  Invoking the

criteria of 19 C.F.R. § 351.401(f)(2), the Decision Memorandum concludes that "there is no

evidence that the POSCO Group and Union share sales information, production and pricing

decisions, facilities, or employees" and that "[t]here is no evidence on the record of this

proceeding which indicates that the POSCO Group and Union are engaged in any significant

transactions during the POR." *Id.*

Regarding "the level of common ownership" criterion of 19 C.F.R. § 351.401(f)(2), the

record evidence is that common ownership existed between the two entities but also that it was,

as defendant argues, a small percentage of ownership.  Def. Resp. 21.  While the Department's

application of the "common ownership" criterion is supported by substantial record evidence, the

same cannot be said of the analysis the Department conducted under the criterion of "significant

transactions between the affiliated producers," *see* 19 C.F.R. § 351.401(f).  Without elaborating,

Commerce found, in the Decision Memorandum, a lack of "any significant transactions"

between Union and the POSCO Group during the period of review.  *Decision Mem.* 22.

Defendant attempts to characterize this finding as one supported by substantial evidence, arguing

that  "record evidence demonstrated that the POSCO Group made no purchases from Union

during the period of review, while Union purchased only a limited amount of input materials

from the POSCO Group–accounting for only a small portion of Union's overall purchases."

Def. Resp. 19.  As discussed previously, defendant concedes that the Department erred in stating

in the Decision Memorandum that Union's purchases of steel substrate from the POSCO Group

were an insignificant percentage of Union's total steel substrate purchases and describes that

finding, as stated in the Decision Memorandum, as an "inadvertent error." *Id.* at 13.

      The court holds that the Department erred in stating in the Decision Memorandum its

finding that "[t]here is no evidence on the record of this proceeding which indicates that the

POSCO Group and Union are engaged in any significant transactions during the POR." *See*

*Decision Mem.* 22.  Because that erroneous finding was one of the stated reasons why Commerce

decided not to collapse Union and the POSCO Group, the court must remand for reconsideration

the decision not to collapse Union and the POSCO Group.  On remand, the Department also

must revisit the question of whether the two companies have production facilities for

manufacturing subject merchandise that would not require substantial retooling to restructure

manufacturing priorities.  As discussed previously, the Department answered that question in the

affirmative in the pre-decisional memorandum prior to issuance of the Preliminary Results and

then, in the Decision Memorandum, mischaracterized its earlier decision.

### III.  CONCLUSION AND ORDER

The court will grant defendant's request for a voluntary remand so that Commerce may

review and reconsider its finding that adjustments to the valuation of steel substrate that Union

obtained from its affiliated suppliers should be disregarded as negligible.  On remand, the

Department also must review and reconsider its decision not to apply the major input rule to

Union's purchases of steel substrate from the POSCO Group, its method of applying the major

input rule to value the steel substrate that Union obtained from JFE Steel through purchases from

the trading company, and its decision not to collapse Union and the POSCO Group.[4]

### ORDER

Based on the court's consideration of *Certain Corrosion-Resistant Carbon Steel Flat

Products from the Republic of Korea: Notice of Final Results of the Fourteenth Admin. Review

& Partial Rescission*, 74 Fed. Reg. 11,082 (Mar. 16, 2009) (the "Final Results"), the motions of

plaintiffs under USCIT Rule 56.2 for judgment on the agency record, the submissions of all

parties, and all other papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that the Rule 56.2 motion of plaintiff United States Steel Corporation be,
and hereby is, GRANTED; it is further

**ORDERED** that the Rule 56.2 motion of plaintiff Nucor Corporation be, and hereby is,
GRANTED in part and DENIED in part; it is further

---

[4] The court's order sets forth a schedule for the remand proceeding parallel to that
ordered in *Union Steel v. United States*, Court No. 09-130 (Feb. 15, 2011) ("*Union*"), so that the
remand redetermination filed pursuant to this Opinion and Order will take into account any other
adjustments to redetermined dumping margins resulting from the court's remand order in *Union*,
which pertains to the same administrative review that is the subject of this litigation.

**ORDERED** that the Final Results be, and hereby are, remanded to the Department for reconsideration and redetermination in accordance with this Opinion and Order; it is further

**ORDERED** that Commerce, on remand, shall review and reconsider its determinations that potential adjustments to the costs of Union Steel Manufacturing Co., Ltd. ("Union") to purchase steel substrate from affiliated suppliers should be disregarded as negligible; it is further

**ORDERED** that Commerce, on remand, shall review and reconsider its decision not to apply the major input rule to Union's purchases of steel substrate from Pohang Iron & Steel Co., Ltd. and Pohang Coated Steel Co., Ltd. (collectively, the "POSCO Group"); it is further

**ORDERED** that Commerce, on remand, shall reconsider its method of applying the major input rule to value the steel substrate that Union obtained from JFE Steel through purchases from a trading company and include a satisfactory explanation for its decisions; it is further

**ORDERED** that Commerce, on remand, shall review and reconsider its decision not to treat Union and the POSCO Group as a single entity for purposes of the administrative review; it is further

**ORDERED** that the Department shall file remand results in compliance with this Opinion and Order that are supported by substantial evidence and otherwise in accordance with law; and it is further

**ORDERED** that the Department shall have ninety (90) days from the date of this Opinion and Order to file its remand results, that plaintiff, plaintiff-intervenor and defendant-intervenors shall have thirty (30) days from the filing of those results to file comments thereon with the court, and that defendant shall have fifteen (15) days thereafter to file any reply to such comments.

 /s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: February 15, 2011
          New York, New York