**Slip Op. 12-**55

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **UNITED STATES STEEL CORPORATION**, Plaintiff, and **NUCOR CORPORATION**, Plaintiff-Intervenor, v. **UNITED STATES**, Defendant, and **UNION STEEL**, **POHANG IRON & STEEL CO., LTD.**, **POHANG COATED STEEL CO., LTD.**, and **HYUNDAI HYSCO**, Defendant-Intervenors. | **Before: Timothy C. Stanceu, Judge** **Consol. Court No. 09-00156** |

## OPINION

[Affirming a remand redetermination in an administrative review of an antidumping duty order on imports of certain corrosion-resistant carbon steel flat products from the Republic of Korea]

Dated: April 25, 2012

*Jeffrey D. Gerrish*, *Ellen J. Schneider*, and *Robert E. Lighthizer*, Skadden, Arps, Slate, Meagher & Flom LLP, of Washington, DC, for plaintiff United States Steel Corporation.

*Alan H. Price* and *Timothy C. Brightbill*, Wiley Rein LLP, of Washington, DC, for plaintiff-intervenor Nucor Corporation.

*Tara K. Hogan*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Claudia Burke*, Assistant

**Consol. Court No. 09-00156**                                                                                              Page 2

Director.  Of counsel on the brief was *Daniel J. Calhoun*, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

*Donald B. Cameron*, *Julie C. Mendoza*, *R. Will Planert*, *Brady W. Mills*, and *Mary S. Hodgins*, Morris, Manning & Martin LLP, of Washington, DC, for defendant-intervenor Union Steel.

*Jaehong D. Park*, *Bryce V. Bittner*, *Jarrod M. Goldfeder*, *Lisa-Marie W. Ross*, and *Natalya D. Dobrowolsky*, Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington, DC, for defendant-intervenors Pohang Iron & Steel Co., Ltd. and Pohang Coated Steel Co., Ltd.

*Jaehong D. Park*, *Bryce V. Bittner*, *Jarrod M. Goldfeder*, *Lisa-Marie W. Ross*, and *Natalya D. Dobrowolsky*, Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington, DC for defendant-intervenor Hyundai Hysco.

Stanceu, Judge: Plaintiff United States Steel Corporation ("U.S. Steel"), a domestic manufacturer of corrosion-resistant carbon steel flat products ("CORE"), contests a published decision that the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") issued in an antidumping duty proceeding.  U.S. Steel brought this action under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a (2006), to challenge various decisions Commerce made in the final results of the fourteenth periodic administrative review of an antidumping duty order on imports of certain CORE from the Republic of Korea ("Final Results") between August 1, 2006 and July 31, 2007 (the "period of review" or "POR").  Compl. ¶¶ 1, 3 (May 15, 2009), ECF No. 11; *Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea: Notice of Final Results of the Fourteenth Admin. Review & Partial Rescission*, 74 Fed. Reg. 11,082 (Mar. 16, 2009) ("*Final Results*").  Nucor Corporation ("Nucor"), another domestic manufacturer of CORE, also contested the Final Results, and the court has consolidated the two actions.  Compl. (May 15, 2009), ECF No. 9 (Court No. 09-00152).

Consol. Court No. 09-00156                                                                              Page 3

Before the court is the determination ("Remand Redetermination") Commerce issued in response to the court's order in *United States Steel Corporation v. United States*, 35 CIT __, __, 759 F. Supp. 2d 1349, 1360 (2011) ("*U.S. Steel Corp.*"). *Final Results of Redetermination Pursuant to Remand* (July 15, 2011), ECF No. 105 ("*Remand Redetermination*"). Only one issue remains contested in this case. The court affirms the Department's decision addressing that issue and the decisions addressing the various other issues raised in this litigation, as stated in the Remand Redetermination.

## I. BACKGROUND

Background on this litigation is set forth in the court's prior opinion and order and supplemented herein. *U.S. Steel Corp.*, 35 CIT at __, 759 F. Supp. 2d at 1352.

In *U.S. Steel Corp.*, the court ordered that Commerce: (1) reconsider the decision to disregard as negligible certain potential adjustments to the costs incurred by Union Steel Manufacturing Co., Ltd. ("Union"), a respondent in the administrative review and defendant-intervenor before the court, for purchases from affiliated suppliers of "steel substrate," which is carbon steel coil used to produce CORE; (2) reconsider the decision not to apply the "major input rule" to Union's purchases of steel substrate from two other parties that were respondents in the administrative review and are defendant-intervenors before the court, Pohang Iron & Steel Co., Ltd. ("POSCO") and Pohang Coated Steel Co., Ltd. ("POCOS") (collectively, the "POSCO Group"); (3) reconsider and explain its method of applying the major input rule to value the steel substrate that Union obtained from a certain supplier (JFE Steel) through purchases from a trading company; and (4) reconsider the decision not to "collapse" Union and the POSCO Group, *i.e.*, the decision not to treat these two companies as a single entity for purposes of the

Consol. Court No. 09-00156                                                                                    Page 4

fourteenth administrative review. *Id.* at __, 759 F. Supp. 2d at 1360. The court set forth a remand schedule so that the Remand Redetermination could "take into account any other adjustments to redetermined dumping margins resulting from the court's remand order in *Union*, which pertains to the same administrative review that is the subject of this litigation." *Id.* at __, 759 F. Supp. 2d at 1360 n.4. (citing *Union Steel v. United States*, 35 CIT __, 755 F. Supp. 2d 1304 (2011)). In *U.S. Steel Corp.*, the court rejected a claim, brought by Nucor, that Commerce had acted contrary to law in declining to apply the major input rule to Union's affiliated suppliers other than the POSCO Group and a related trading company. *Id.* at __, 759 F. Supp. 2d at 1357.

      Commerce filed the Remand Redetermination on July 15, 2011. *Remand Redetermination.* Union and U.S. Steel filed comments on August 15, 2011, and Nucor filed comments the following day. Def.-Intervenor Union Steel's Comments on the U.S. Department of Commerce's July 15, 2011 Final Results of Redetermination Pursuant to Ct. Remand (Aug. 15, 2011), ECF No. 109; United States Steel Corp.'s Comments on the Final Results of Redetermination Pursuant to Remand Issued by the Department of Commerce (Aug. 15, 2011), ECF No. 108; Comments on Final Results of Redetermination Pursuant to Ct. Order (Aug. 16, 2011), ECF No. 117 ("Nucor's Comments"). Defendant replied to Nucor's comments on September 1, 2011. Def.'s Resp. to Pl-Intervenor's Comments on the Department of Commerce's Remand Results (Sept. 1, 2011), ECF No. 123.

## II. DISCUSSION

      The court exercises jurisdiction pursuant to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c) (2006), which grants the Court of International Trade exclusive

jurisdiction over any civil action commenced under 19 U.S.C. § 1516a. The court reviews the Final Results based on the agency record. *See* Customs Courts Act of 1980, § 301, 28 U.S.C. § 2640(b); 19 U.S.C. § 1516a(b)(1)(B)(i). The court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i).

In the Remand Redetermination, Commerce: (1) did not disregard as negligible the adjustments to Union's costs for purchases of substrate from affiliated parties, *Remand Redetermination* 14; (2) applied the major input rule to Union's purchases of steel substrate from the POSCO Group; *id.* at 10-14; (3) applied the major input rule to Union's purchases of steel substrate from JFE Steel through a trading company using a methodology differing from that used in the Final Results and provided an explanation for that methodology, *id.* at 5-10; and (4) determined, as it had in the Final Results, that Union and the POSCO Group should not be "collapsed," *i.e.*, treated as a single entity for purposes of this administrative review, *id.* at 15-21. Commerce also stated that, pursuant to the court's remand order in *Union Steel*, it had "recalculated Union's margin to account for revising the Department's physical characteristics classifications and subsequent model-match results to create a separate category for laminated CORE products . . . ." *Id.* at 2. In the Remand Redetermination, Commerce decreased Union's weighted-average dumping margin from 7.56% to 7.45%. *Id.* at 22.

Only Nucor opposes the Remand Redetermination. Nucor's sole claim in this litigation challenges the Department's decision not to treat Union and the POSCO Group as a single entity for purposes of conducting the fourteenth administrative review. *See* Nucor's Comments.

**Consol. Court No. 09-00156** Page 6

In the absence of opposition from any party, the court affirms the Department's decisions (1) adjusting Union's costs for purchasing steel substrate from affiliates, (2) applying the major input rule to Union's purchases of substrate from the POSCO Group, and (3) applying the major input rule to Union's purchases of steel substrate from a supplier through a trading company using a revised methodology. On the remaining contested issue in this litigation, the court upholds the Department's decision not to collapse Union and the POSCO Group in conducting the fourteenth review, for the reasons discussed in this opinion. However, the court will defer the entry of judgment affirming the 7.45% weighted-average dumping margin the Remand Redetermination assigned to Union until the completion of proceedings in another case involving the fourteenth administrative review, *Union Steel v. United States*, Court No. 09-00130, as a result of which proceedings the determination of a weighted-average dumping margin for Union remains an open issue.

Under its regulations, Commerce "will treat two or more affiliated producers as a single entity" when two conditions are met. 19 C.F.R. § 351.401(f)(1) (2008). The first condition is that the affiliated producers "have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities." *Id*. The second condition is that "the Secretary concludes that there is a significant potential for the manipulation of price or production." *Id*. The regulations specify that in evaluating the second condition Commerce "may consider" the following factors:

　(i) The level of common ownership;

　(ii) The extent to which managerial employees or board members of one firm sit on
　　 the board of directors of an affiliated firm; and

Consol. Court No. 09-00156																					Page 7

>  (iii) Whether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers.

*Id.* § 351.401(f)(2).

In the Issues and Decision Memorandum Commerce incorporated into the Final Results ("Decision Memorandum"), Commerce decided that neither condition for "collapsing" Union and the POSCO Group was satisfied, stating first that "the POSCO Group and Union did not fit the criteria of 19 CFR 351.401(f), where two or more producers have production facilities for similar or identical products that would not require substantial retooling of either facility to restructure manufacturing priorities." Issues & Decisions Mem., A-580-816, ARP 7-07, at 22 (Mar. 9, 2009) (Admin. R. Doc. No. 4868) ("*Decision Mem.*"). Regarding the second condition, Commerce concluded that there was "no significant potential for the POSCO Group and Union to manipulate the price or cost of CORE exported to the U.S." *Id.* at 23. As part of its justification for this conclusion, Commerce found that "[t]here is no evidence on the record of this proceeding which indicates that the POSCO Group and Union are engaged in any significant transactions during the POR." *Id.* at 22.

In *U.S. Steel Corp.*, the court concluded (and defendant conceded) that Commerce erred in finding Union's purchases of steel substrate from the POSCO Group to be an insignificant percentage of Union's total steel substrate purchases. 35 CIT at __, 759 F. Supp. 2d at 1359 (noting that defendant characterized the Department's finding as "inadvertent error"). The court ordered Commerce to reconsider the decision not to collapse the two companies, also questioning the Department's finding that Union and the POSCO Group lacked production facilities for manufacturing subject merchandise that would not require substantial retooling to

restructure manufacturing priorities. *Id.* at __, 759 F. Supp. 2d at 1359.  The court was unable to find substantial record evidence to support the latter finding, which appeared inconsistent with a pre-decisional memorandum Commerce had prepared. *Id.* at __, 759 F. Supp. 2d at 1358 (citing *Mem. to Dir., AD/CVD Operations, Office 3*, at 4 (Sept. 2, 2008) (Admin. R. Doc. No. 4732)).

      In the Remand Redetermination, Commerce acknowledges that the first condition under § 351.401(f)(1) is satisfied because "substantial retooling of facilities would not be needed to restructure manufacturing priorities," both Union and the POSCO Group being "large producers of subject merchandise." *Remand Redetermination* 16.  Still, Commerce declines to collapse Union and the POSCO Group, considering the second condition unsatisfied.  Commerce analyzed the "structure of the firms and their operations" and the "transactions between parties during the POR" to reach a conclusion that there is not a "significant" potential for price or production manipulation. *Id.* at 16-21.

      On the first of the three factors in 19 C.F.R. § 351.401(f)(2), the level of common ownership, the Remand Redetermination finds only a "minimal" level of common ownership, referring to the purchase by Union's parent company, Dongkuk Steel Mills ("DSM"), of 9.8% of the shares of POCOS on April 27, 2007 and the May 2, 2007 purchase by the POSCO Group of a 9.8% interest in Union. *Id.* at 15, 17.  Commerce concludes that "the POSCO Group and Union are large independent producers of CORE and other steel products and a 'minimal' level of common ownership does not change the essential business of the companies." *Id.* at 17. Commerce also concludes that, ownership transfer aside, "there have been no other significant material changes in the business relationship between the POSCO Group and Union during this POR to warrant reconsideration of collapsing the two entities." *Id*.  On the second factor, "[t]he

extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm," 19 C.F.R. § 351.401(f)(2)(ii), Commerce finds "there is no evidence indicating any overlap of individuals in management or corporate governance roles . . . ." *Remand Redetermination* 18. On the third factor, § 351.402(f)(2)(iii), Commerce does not consider the operations of Union and the POSCO Group to be "intertwined." *Id.* at 20-21.

Regarding the third factor, Commerce acknowledges that it was "inaccurate when it explained in the *Final Results* that the POSCO Group accounted for an insignificant portion of Union's material purchases," referring to purchases by Union of substrate from the POSCO Group. *Id.* at 18. Commerce, however, does not consider these purchases sufficient to cause it to alter its previous decision not to collapse the two entities, stating that "in considering the POSCO Group as an affiliated party with Union, we note that the acquisition of ownership interests took place in May 2007, which means that the parties were only affiliated for the last quarter of the POR and the parties were unaffiliated for three quarters of the POR." *Id.* Commerce finds no indication of a change in the existing supply relationship between the parties following the acquisition, *id.* at 19, and also finds that "[t]he majority of the POSCO Group's transactions were arm's-length, market-based, and with unaffiliated parties," *id.*

With respect to the two conditions § 351.402(f)(1) identifies for collapsing, the Remand Redetermination concludes that record evidence is sufficient to satisfy only the first condition, *i.e.*, production facilities that would not require substantial retooling. For the second condition, *i.e.*, a significant potential for manipulation of price or production, Commerce applies the first two factors of § 351.402(f)(2) to find a minimal level of common ownership and no managers or board members in common. From its review of the record, the court concludes that substantial

Consol. Court No. 09-00156									Page 10

evidence supports the finding of minimal common ownership. The POSCO Group owned only 9.8% of Union; DSM retained 65%. *Remand Redetermination* 15; *Mem. from the CORE Team to Office Dir., AD/CVD Enforcement 3*, at 1 (July 15, 2011) (Admin. R. Doc. No. 5875) ("*Remand Analysis Mem.*"). Although DSM owned a 9.8% interest in the POSCO Group's affiliate POCOS, Union did not own any interest in the POSCO Group. *Remand Redetermination* 14. On the second factor, the court does not see in the record evidence of individuals having served in either a managerial role or corporate governance role at both companies.[1]

On the third factor, the record supports the Department's finding that the business operations of Union and the POSCO Group were not intertwined. Commerce finds significant transactions between the affiliates but also finds, based on other evidence as discussed above (including evidence that the acquisition did not alter the substrate purchasing practices in question), that these transactions, considered alone, do not establish a significant potential for the manipulation of price or production. Commerce views the transactions to represent "nothing more than a continuation of a prior commercial relationship rather than a vehicle for manipulation in regards to dumping." *Id.* at 21. The record evidence in support of the Department's finding includes statements by both Union and the POSCO Group that the

---

[1] The court's review of the record evidence included comparing the individuals listed as the directors of Pohang Iron & Steel Co., Ltd. ("POSCO") as of December 31, 2006 with the individuals listed as "Board Members and Senior Managers" of Dongkuk Steel Mills, Union Steel Manufacturing Co., Ltd., and other related companies, as of December 31, 2006. *Compare Letter from POSCO to the Sec'y of Commerce* exhibit A-6 (Feb. 4, 2008) (Admin. R. Doc. No. 4532) *with Letter from Union to the Sec'y of Commerce* exhibit A-10 (Jan. 22, 2008) (Admin. R. Doc. No. 4504). The record appears to lack documentation of the directors and officers of these companies after the share acquisition agreement.

Consol. Court No. 09-00156                                                                                      Page 11

commercial relationship between the two entities remained unchanged after the share purchases. *Letter from Union to the Sec'y of Commerce* 1 (Apr. 19, 2011) (Admin. R. Doc. No. 5785) ("POSCO's pricing policies with respect to Union did not change in any way as a result of its purchase of Union's shares."); *Letter from the POSCO Group to the Sec'y of Commerce* 1 (Apr. 19, 2011) (Admin. R. Doc. No. 5783) ("All transactions between POSCO and Union are commercial and at arm's-length."). Additionally, the Department's analysis showed that the POSCO Group's sales to Union both before and after the two companies became affiliated were, on average, at prices significantly above the POSCO Group's cost of production. *Remand Analysis Mem.* 2.

      The court concludes that the record supports the Department's findings addressing the three factors of 19 C.F.R. § 351.401(f)(2) and that Commerce was not required on this record to find a significant potential for price or production manipulation. In summary, the record evidence supports a finding of a low level of common ownership, a finding that there were no managerial employees or board members in common, and a finding that the operations of the two entities were not intertwined. Union's substrate purchases from the POSCO Group predated the acquisition, and the record lacks evidence that the acquisition altered the pattern of these purchases. The record evidence considered as a whole does not compel a conclusion that there was a significant potential for the parties to manipulate the price or production of the subject merchandise.

      In commenting on a draft version of the Remand Redetermination, Nucor argued that Commerce acted unlawfully in deciding not to collapse Union and the POSCO Group by failing to consider "several key factors weighing against its conclusion that there is no evidence

indicating any intertwining of business operations." *Letter from Nucor to the Sec'y of Commerce* 5 (June 22, 2011) (Admin. R. Doc. No. 5855) (internal quotation omitted); *Remand Redetermination* 20. Nucor makes essentially the same argument before the court, arguing that the decision not to collapse the two entities "is flawed and not supported by substantial record evidence." Nucor's Comments 3. According to Nucor, "the Department rejected compelling evidence on the record indicating a significant *potential* for price and/or production manipulation without providing a sound basis for doing so." *Id.* at 4.

In claiming that Commerce "rejected compelling evidence," Nucor points to the common ownership and to the aforementioned purchases by Union of substrate from the POSCO Group. Nucor's Comments 4-6. It also points to a "Memorandum of Understanding" ("MOU") between DSM and the POSCO Group addressing DSM's acquisition of a share in POCOS and the POSCO Group's acquisition of a share in Union, *Letter from Union to the Sec'y of Commerce* exhibit A-36 (July 16, 2008) (Admin. R. Doc. No. 4675) ("*Union's July 16, 2006 Questionnaire Resp.*"), and to press releases and news reports discussing the MOU, *Letter from U.S. Steel to the Sec'y of Commerce* exhibits A-B (vol. II) (Mar. 18, 2008) (Admin. R. Doc. No. 4579) ("*MOU Media Reports*"). Nucor's Comments 4-6.

The court's review of the record causes it to reject Nucor's argument. The record evidence to which Nucor directs the court's attention, when considered according to the criteria and factors in the Department's regulation, 19 C.F.R. § 351.401(f), was insufficient to compel Commerce to collapse Union and the POSCO Group. The second criterion in § 351.401(f)(1) calls for Commerce to determine whether there is a "significant" potential for manipulation of price or production. In the preamble accompanying promulgation of the regulation, Commerce

Consol. Court No. 09-00156                                                                                      Page 13

described the determination as "very much fact-specific in nature, requiring a case-by-case analysis . . . ." *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,345-46 (May 19, 1997) ("*Preamble*").  The three factors the regulation applies to this case-by-case analysis are permissive and non-exhaustive.  *See* 19 C.F.R. § 351.401(f)(2)(i)-(iii) ("[T]he factors the Secretary may consider include . . .").

With respect to the first factor, Nucor takes issue with the Department's characterization of the common ownership as minimal.  Nucor's Comments 5.  This objection ignores the record facts that the POSCO Group owned 9.8% of Union and that DSM retained 65%.

Nucor does not address the second factor (*i.e.*, the extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm).  On the third factor, intertwined operations, Nucor's reliance on the substrate purchases to support its position is also unavailing.  The substrate purchases are not very probative on the question of a significant potential for the manipulation of price or production when considered in the context of other record evidence.  As Commerce found, and the record supported, the purchasing pattern was not altered by the acquisition.  In connection with its argument, Nucor mentions the fact that Commerce acknowledges its erroneous finding that the purchases accounted for an insignificant portion of Union's material purchases.  Nucor's Comments 5.  That erroneous finding was made in the Final Results and corrected in the Remand Redetermination; on remand Commerce fully considered the implications of the purchases in making its decision regarding collapsing.

Nucor argues that the MOU "suggest[s] current and future sharing of sales, production, pricing, and technological information and the potential for one entity to shift production to the other in order to avoid a high antidumping duty rate."  *Id.* at 4-5.  The Remand Redetermination

Consol. Court No. 09-00156                                                                                   Page 14

concludes, to the contrary, that the MOU and the media reports do not establish a significant potential for manipulation of price or production because they "articulate only very general goals consistent with" a share acquisition transaction.  *Remand Redetermination* 21.  Commerce characterized as "merely speculative" Nucor's reliance on the MOU "to extrapolate a potential risk that the POSCO Group and Union could, sometime in the future, manipulate price and production."  *Id.*

The court has examined the MOU, the text of which is proprietary.  As Commerce did, the court concludes that Nucor's argument directed to the MOU is based on speculation, not probative evidence.  *See Union's July 16, 2008 Questionnaire Resp.* exhibit A-36.  On the subject of the press releases and press reports about the parties to the MOU, Nucor argues that "[p]ublic releases and reports noted that 'the exchange is aimed at strengthening their long-time cooperation in the cold-rolled steel business;' that "[t]his alliance is intended to strengthen the price competitiveness of the coated sheet products;' and that the firms 'will cooperate in technology and operation knowhow and joint marketing in China and [the] American market.'"  Nucor's Comments 5 (quoting *MOU Media Reports*) (alterations in original).  Both media reports cited by Nucor identify a rationale for the MOU other than price or production manipulation: protection from hostile merger and acquisition attempts.  *MOU Media Reports* exhibit A ("Posco Builds Takeover Defense with Share Swaps"); *id.* exhibit B ("[B]oth firms will cooperate in . . . protection from Arcelor Mittal's hostile M&A.").  Nucor is unconvincing in ascribing to the MOU a potential for a production shift to avoid a high antidumping duty rate.

 Nucor argues, further, that the Department's analysis under 19 C.F.R. § 351.401(f)(2) was unlawful because the Department required evidence of actual manipulation of price or

Consol. Court No. 09-00156 Page 15

production rather than evidence of the potential for such manipulation in the future as required by the regulation. Nucor's Comments 3. Nucor argues that the Department improperly ignored that the MOU and related media reports showed the potential for future manipulations, citing the Department's statement that "Nucor's reliance upon certain language from the MOU to extrapolate a potential risk that the POSCO Group and Union could, sometime in the future, manipulate price and produce is merely speculative . . . ." *Id.* at 4-5 (citing *Remand Redetermination* 21). Nucor posits that "the Department's finding that Nucor's evidence does not provide *actual* evidence of price and production manipulation does not support the Department's conclusion that the record contains no evidence of a significant *potential* for such manipulation." *Id.* at 6. This argument is not persuasive.

Although Nucor correctly describes the analysis required by 19 C.F.R. § 351.401(f)(2) as "forward-looking," *id.* at 6 (quoting *Preamble*, 62 Fed. Reg. at 27,345-46), the analysis in the Remand Redetermination does not depart from the regulation. Under § 351.401(f)(2), Commerce assesses the potential for future manipulations based on current evidence, such as current common ownership, current overlapping employees and directors, current intertwined business operations, and significant transactions in the recent past. In this case, Commerce assessed each factor in § 351.401(f)(2)(i)-(iii), reaching a finding as to the potential for future manipulation that is supported by substantial evidence. The Remand Redetermination did not, as Nucor implies, limit its inquiry to ascertaining whether Union and the POSCO Group had already manipulated price and production. Although Commerce rejected Nucor's arguments pertaining to the MOU as "speculative," it does not follow that Commerce ignored a significant potential for manipulations of price or production in the future. It is apparent to the court that

**Consol. Court No. 09-00156**                                                                                                              **Page 16**

Commerce used the term "speculative" in explaining why it did not consider the MOU and media reports, when viewed in the context of the other record evidence, to compel a conclusion that the second criterion of § 351.401(f)(1) was satisfied.

### III.  CONCLUSION

Upon review of the Remand Redetermination, Nucor's comments thereon, and all other papers and proceedings, the court concludes that the decision in the Remand Redetermination not to collapse the POSCO Group and Union is in accordance with law.  The remaining decisions set forth in the Remand Redetermination are affirmed as uncontested between the parties.  The court affirms the Remand Redetermination except with respect to the 7.45% redetermined weighted-average dumping margin for Union.  The exact margin amount is an open issue as a result of the remand on the zeroing issue in *Union Steel v. United States*, Court No. 09-00130.

                                                             /s/ Timothy C. Stanceu
                                                            Timothy C. Stanceu
                                                           Judge

Dated: April 25, 2012
       New York, New York